UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TARA D. SADLER and DONALD SADLER, Wife and Husband,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurer,<br><br>Defendant. | No. C07-995Z<br><br>ORDER |

THIS MATTER comes before the Court on the motion of defendant State Farm Mutual Automobile Insurance Company ("State Farm") to dismiss four of plaintiff's eight claims. The Court, having considered State Farm's motion, plaintiff's response thereto, State Farm's reply, and all papers filed in support of and in opposition to State Farm's motion, does hereby ORDER:

(1)  State Farm's motion to dismiss certain claims, docket no. 2, is GRANTED IN PART and DENIED IN PART. The fifth (intentional misrepresentation) and eighth (punitive damages) counts of plaintiff's complaint are hereby dismissed. The Court, however, grants leave to plaintiff to amend her intentional misrepresentation or fraud claim. Plaintiff must

ORDER   1–

file any amended complaint within ninety (90) days after the date of this order. State Farm's motion to dismiss is otherwise denied.

(2) State Farm's motion to strike, docket no. 7, is GRANTED. The declaration of plaintiff's counsel, along with the exhibits attached thereto, docket no. 6, is STRICKEN.

**Background**

Because this matter comes before the Court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court assumes the truth of the allegations in plaintiff's complaint. According to the complaint, in February 2004, Donald Sadler was driving a vehicle in Yakima, Washington. Complaint at ¶ 2.5, Exh. A to Notice of Removal (docket no. 1). Plaintiff Tara Sadler was in the front passenger seat. _Id._ Mr. Sadler had to brake suddenly to avoid colliding with another car, which caused plaintiff to lurch forward and then back in her seat. _Id._ In April 2004, plaintiff applied for Personal Injury Protection ("PIP") benefits under an automobile insurance policy issued by State Farm to the Sadlers. _Id._ at ¶ 2.6. The PIP provision recites that State Farm "will pay reasonable medical expenses incurred, for bodily injury caused by accident, for services furnished within three years of the date of the accident." _Id._ at ¶ 2.2. State Farm approved plaintiff's claim and paid PIP benefits until June 2004. _Id._ at ¶ 2.6.

On June 1, 2004, plaintiff underwent a magnetic resonance imaging ("MRI") scan of her neck, which revealed a herniated disc at C5-C6 of the cervical spine. _Id._ at ¶ 2.7. State Farm paid for the MRI scan. _Id._ After reviewing the results of the MRI scan, Dr. St. Elmo Newton III concluded that plaintiff needed surgery. _Id._ at ¶ 2.8. Dr. Newton referred plaintiff to Dr. Jayashree Srinivasan, a neurosurgeon, who agreed to perform the procedure. _Id._ at ¶¶ 2.9-2.10. Plaintiff advised Dr. Srinivasan that she had no medical insurance, but that approximately $18,000 in PIP benefits remained available. _Id._ at ¶ 2.10. On June 11, 2004, Dr. Srinivasan was advised that the proposed surgery had not been "approved" by State Farm. _Id._ at ¶¶ 2.11-2.12.

ORDER 2–

State Farm subsequently sent a letter to plaintiff indicating that it was suspending PIP benefits pending an independent medical examination. <u>Id.</u> at ¶ 2.14. During the interim, plaintiff visited a chiropractor, who faxed to State Farm a copy of Dr. Srinivasan's report, indicating that surgery was warranted and that "time is of the essence." <u>Id.</u> at ¶ 2.16. On July 15, 2004, plaintiff was evaluated by Dr. Gorman, an orthopedic surgeon retained by State Farm. <u>Id.</u> at ¶ 2.18. Dr. Gorman concurred with the assessment that surgery was appropriate and should be performed "as soon as it can possibly be arranged." <u>Id.</u>

On July 29, 2004, Dr. Srinivasan operated on plaintiff's herniated disc, but the surgery was unsuccessful. <u>Id.</u> at ¶ 2.20. A second procedure was performed on August 4, 2004, but did not restore plaintiff to her pre-accident condition. <u>Id.</u> at 2.21. Plaintiff alleges that she has permanent disabilities in her right upper and lower extremities, neck, and shoulder. <u>Id.</u> She contends that such disabilities would not have been as severe had State Farm not delayed in approving funding for the initial surgery. <u>See id.</u> at ¶¶ 2.22-2.25.

**Discussion**

    **A.**    **Standard for Motion to Dismiss**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007). The complaint must indicate more than mere speculation of a right to relief. <u>Id.</u> at 1965. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Id.</u> at 1966. A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim.[1] <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th

---

[1] Plaintiff asserts that the applicable standard is articulated in the following passage from <u>Conley v. Gibson</u>, 355 U.S. 41 (1957): "[A] complaint should not be dismissed for failure to

ORDER   3–

1  Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the

2  plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  *Usher v.*

3  *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

### B.   Breach of Fiduciary Duty

State Farm asserts that, under Washington law,[2] insurers do not owe "true" fiduciary obligations to insureds.  In essence, State Farm argues that plaintiff's claim for breach of fiduciary duty is duplicative of her claim for breach of good faith duty and that the former claim should therefore be dismissed.  Both parties cite to a Washington Supreme Court opinion, *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 16 P.3d 574 (2001), that generally describes the duties owed by insurance companies;[3] however, the *Van Noy*

---

state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* at 45-46.  This "no set of facts" language, however, was recently expressly rejected by the Supreme Court.  *See Twombly*, 127 S. Ct. at 1969 ("Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough. . . .  [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement.").

[2] The parties appear to agree that Washington law applies in this matter.  Neither party has offered evidence of a contractual choice-of-law provision to the contrary.

[3] In *Van Noy*, in reversing the trial court's grant of summary judgment in State Farm's favor, the Court of Appeals observed that an insurer has "an enhanced fiduciary obligation that rises to a level higher than that of mere honesty and lawfulness of purpose.  It requires an insurer to deal fairly with an insured, giving equal consideration in all matters to the insured's interests as well as its own."  *Id.* at 791, 16 P.3d at 578 (quoting *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 98 Wn. App. 487, 492, 983 P.2d 1129 (1999)).  State Farm sought discretionary review by the Supreme Court, asserting that the Court of Appeals incorrectly imposed a "novel" duty on State Farm to "disclose all facts that would aid its insureds in protecting their interests," which is akin to the obligations inherent in a "true" fiduciary relationship.  *Id.*  The Supreme Court agreed with State Farm that insurance companies do not have "true" fiduciary duties, but rather have a "quasi-fiduciary relationship" with their insureds.  *Id.* at 792, 16 P.3d at 578.  The Supreme Court nevertheless affirmed, finding Division I's description of the insurer's obligations to be generally accurate.  *Id.* at 793, 16 P.3d at 579.  An insurer has a duty "to exercise a high standard of good faith which obligates it to deal fairly and give 'equal consideration' in all matters to the insured's interests."  *Id.* at 794, 16 P.3d at 579.

ORDER   4–

Court did not address the precise issue here, namely whether an insured could plead and maintain two separate actions, one for breach of fiduciary duty and one for bad faith. The insureds in *Van Noy* had sued under both theories, but because the trial court had granted summary judgment in State Farm's favor on all claims, the issues of whether the causes of action are (i) redundant or (ii) properly plead in a particular manner were not before the Supreme Court. In addressing the concerns raised in Justice Talmadge's concurring opinion, however, the *Van Noy* majority provided dicta helpful to resolution of the motion now before the Court. Justice Talmadge identified problems in using fiduciary terms when the insurer and insured have a coverage dispute. *Id.* at 799-800, 16 P.3d at 582 (Talmadge, J. Pro Tem., concurring) ("The relationship between a first-party insurer and its policyholder is ill-suited for fiduciary controls. . . . [A]n insurer's interests and an insured's interests are not aligned when the insured is claiming on his own behalf, as they are in third-party cases where insurer and insured face a common adversary. . . . Even when a claim is clearly covered, the insurer and insured may disagree over the amount due or the nature of the benefits to be paid. This inherent conflict . . . cannot be reconciled with the existence of a fiduciary relationship."). According to Justice Talmadge, the "more precise formulation" of the duty owed by the insurer to its insured is one of "good faith." *Id.* at 800, 16 P.3d at 582. In response, the *Van Noy* majority indicated doubt about whether the duty of good faith differed from a fiduciary duty, but to the extent the duties are not coextensive, the majority expressly disagreed "with the notion that an insurer has only a duty of 'good faith,' and not a 'fiduciary' duty, to its insureds in the first-party insurance context." *Id.* at 793 n.2, 16 P.3d at 579 n.2. The *Van Noy* Court observed that, in the first-party context, when the insurer's and the insured's interests might conflict, "the insured is particularly vulnerable and dependent on the insurer's honesty and good faith," and the insurer therefore has a correspondingly higher duty. *Id.*

The Court concludes that the procedural posture of and dicta in *Van Noy* weigh in favor of denying State Farm's motion to dismiss plaintiff's breach of fiduciary duty claim.

ORDER   5–

Although State Farm cites other cases, none of them support a ruling that plaintiff must elect between the claims at issue or that plaintiff must choose the breach of good faith claim over the breach of fiduciary duty claim.  The pleading rules envision that plaintiff may demand relief in the alternative or hypothetically.  Fed. R. Civ. P. 8(a) ("Relief in the alternative or of several different types may be demanded.") & 8(e)(2) ("A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses.").  Although plaintiff's claims might eventually prove duplicative, the Court cannot at this stage of the proceedings find them redundant, particularly given that plaintiff cites different statutory or regulatory provisions in support of the respective claims.[4]  Thus, as to the breach of fiduciary duty claim, because plaintiff has demonstrated sufficient potential for relief, the Court denies State Farm's Rule 12(b)(6) motion to dismiss.

### C.     **Intentional Misrepresentation**

State Farm asks the Court to dismiss plaintiff's claim of intentional misrepresentation because plaintiff has not identified a false statement of existing fact made by State Farm[5] and because plaintiff has not satisfied the heightened pleading requirements for an averment of fraud.  *See* Fed. R. Civ. P. 9(b).  State Farm interprets plaintiff's complaint as relying on State Farm's "like a good neighbor" slogan to support her claim, and argues that mere

---

[4] Plaintiff cites RCW 48.30.010 in the count alleging breach of good faith, and both RCW Chapter 48.22 and WAC 284.30.395 in the count alleging breach of fiduciary duty. Complaint at ¶¶ 3.1 & 3.2.

[5] The parties agree that the elements of intentional misrepresentation or fraud in Washington are:  (i) representation of an existing fact; (ii) materiality; (iii) falsity; (iv) the speaker's knowledge of its falsity; (v) intent of the speaker that it should be acted upon by the plaintiff; (vi) plaintiff's ignorance of its falsity; (vii) plaintiff's reliance on the truth of the representation; (viii) plaintiff's right to rely upon it; and (ix) damages suffered by the plaintiff.  *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194, 204 (1996).  Under Washington law, each element of fraud must be established by "clear, cogent, and convincing evidence."  *Id.*

ORDER   6–

puffing and loose sales talk are not actionable representations, citing *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150 (S.D. Cal. 2001) (holding that Allstate's "in good hands" slogan lacked the "meaningful specificity necessary to be considered a representation of fact") and *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 727 P.2d 655 (1986) (holding that the television commercials at issue were merely "loose general praise of goods," also known as "sales talk or puffing," and that the misrepresentation claim based upon such advertisements was properly dismissed).

In response, plaintiff asserts that Washington law permits an action for fraud based on deceptive advertisements, citing *In re Campbell*, 19 Wn.2d 300, 142 P.2d 492 (1943). *Campbell*, however, does not support plaintiff's position. *Campbell* involved a statute specific to dental practitioners. The statute criminalized *inter alia* advertising in print "in any way that will tend to deceive or defraud the public." *Id.* at 309, 142 P.2d at 496 (quoting Rem. Rev. Stat. § 10031-20, recodified at RCW 18.32.665). The statute is part of the dentistry section in Washington's codified title on businesses and professions, and any violation of the statute constitutes a gross misdemeanor. *See* RCW 18.32.390. Plaintiff has provided no authority to support the contention that the statute governs the insurance industry or that a private right of action exists under the statute. Moreover, the Court finds persuasive State Farm's argument that, even if the slogan was actionable, it would offer no plausible theory of relief because "even good neighbors do not pay their neighbor's medical bills." Reply at 4 (docket no. 7).

With regard to the pleading requirements for fraud, plaintiff asserts that she has provided sufficient specificity and, in the alternative, that she should be permitted to amend her complaint. Plaintiff argues that the contract language indicating State Farm will "pay reasonable medical expenses incurred, for bodily injury caused by accident, for services furnished within three years of the date of the accident" constitutes a promise State Farm did not intend to keep. Plaintiff, however, has misconstrued the contract provision; the term

ORDER  7–

"reasonable" modifies the phrase "medical expenses," and it does not make any commitment about the manner in which State Farm would evaluate coverage.

State Farm contends that plaintiff's allegation of a false promise with no intention to perform is contradicted by facts contained in the complaint, namely that State Farm paid PIP benefits for almost four months before requiring an independent medical examination, and that State Farm paid additional PIP benefits after receiving the report of the physician it retained. State Farm's argument that plaintiff's misrepresentation claim is not adequately pleaded has substantial merit, and the Court therefore grants State Farm's motion to dismiss that cause of action. The Court, however, grants leave for plaintiff to amend the complaint, within ninety (90) days of the date of this order, and proffer specific, actionable misrepresentations of fact made by State Farm and relied upon by plaintiff.

### D.  **Tort of Outrage**

State Farm argues that the way in which it handled plaintiff's application for PIP benefits does not, as a matter of law, rise to the level of atrocious conduct necessary to support a claim for the tort of outrage. In response, plaintiff has submitted an article published in May 2007 by the Seattle Post-Intelligencer titled "Lawsuit blames disability on insurance delay," and 90 postings from the "Sound Off" page of a related web site (www.seattlepi.com). Exhs. A & B to Koehler Decl. (docket no. 6). The postings are anonymous, about 60% of them were made by only six individuals, each of whom commented multiple times over the course of a week, and a significant number of them are actually unfavorable to plaintiff's position. State Farm moves to strike these materials on grounds that (i) they are inappropriate in the context of a Rule 12(b)(6) motion, which should be decided solely on the pleadings, and (ii) they contain inadmissible hearsay, making them improper in the context of a converted motion for summary judgment. *See* Fed. R. Civ. P. 56(e) (requiring that affidavits be made on personal knowledge and contain facts admissible

ORDER  8–

in evidence).  The Court agrees with State Farm and grants the motion to strike the declaration of plaintiff's counsel and the attachments thereto.

The parties agree that, in Washington, the elements of the tort of outrage are: (i) extreme and outrageous conduct; (ii) intentional or reckless infliction of emotional distress; and (iii) actual result to the plaintiff of severe emotional distress.  *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630, 632 (2003); *Dombrosky v. Farmers Ins. Co.*, 84 Wn. App. 245, 261, 928 P.2d 1127, 1136-37 (1997).  The claim must be predicated on conduct that is "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kloepfel*, 149 Wn.2d at 196, 66 P.3d at 632; *Dombrosky*, 84 Wn. App. at 261, 928 P.2d at 1137.  The tort of outrage does not encompass mere insults, indignities, threats, annoyances, or petty oppressions.  *Kloepfel*,149 Wn.2d at 196, 66 P.3d at 632.  A plaintiff is assumed to be "hardened to a certain degree of rough language, unkindness, and lack of consideration." *Id.*  The question whether particular conduct rises to the requisite level of outrageousness is "ordinarily a question of fact for the jury." *Dombrosky*, 84 Wn. App. at 261, 928 P.2d at 1137.  The Court, however, may dismiss a claim if reasonable minds could not differ as to the conclusion that the alleged behavior was not sufficiently extreme.  *Id.* at 261-62, 928 P.2d at 1137.

Here, the Court concludes that reasonable minds could disagree concerning whether State Farm's conduct crossed the bounds of decency.  State Farm characterizes its behavior as merely a one-month suspension of PIP benefits pending an independent medical examination.  It further indicates that, had plaintiff's need for surgery been truly emergent, no hospital in Washington could have denied services to plaintiff based on inability to pay. *See* WAC 246-453-060 ("No hospital shall adopt or maintain practices or policies which would deny access to emergency care based on ability to pay.").  In contrast, plaintiff alleges that State Farm's handling of her request for PIP benefits was part of a nationwide cost-

ORDER   9–

containment policy that vested decision-making authority in adjusters lacking medical training and attempted to maximize profit by placing the corporation's interests above those of its insureds.  Plaintiff places particular emphasis on the delay following Dr. Srinivasan's assessment that surgery was needed (June 11, 2004), her chiropractor's fax to State Farm warning that "time is of the essence" (June 21, 2004), and Dr. Gorman's report to State Farm indicating that the operation should be done "as soon as it can possibly be arranged" (July 15, 2004).  To the extent plaintiff can proffer evidence to support her claim that State Farm purposely and unjustifiably delayed the processing of her application for PIP benefits as part of an overall scheme to increase its profits, plaintiff might meet her burden of proof concerning the tort of outrage.  Thus, plaintiff is entitled to further develop her case, and the Court denies State Farm's motion to dismiss the seventh count of plaintiff's complaint.

### E. Punitive Damages Under Illinois Law

State Farm moves for dismissal of plaintiff's claim for punitive damages.  Plaintiff asserts a right to punitive damages under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act").  Plaintiff's claim lacks merit, and the eighth count of her complaint is therefore dismissed.  The Illinois statute provides, in part: "Unfair methods of competition and unfair or deceptive acts or practices . . . *in the conduct of any trade or commerce* are hereby declared unlawful whether any person has in fact been misled, deceived or damaged, thereby." 815 Ill. Comp. Stat. 505/2 (emphasis added).  The terms "trade" and "commerce" are statutorily defined as "advertising, offering for sale, sale, or distribution of any services and any property" and "include any trade or commerce directly or indirectly affecting the people of this State." 815 Ill. Comp. Stat. 505/1(f).  The Illinois Supreme Court concluded that the just-quoted language of § 1(f) is ambiguous, and it resorted to legislative history to interpret the statutory text.  *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184, 835 N.E.2d 801, 852, 296 Ill. Dec. 448, 499 (2005), *cert. denied*, 547 U.S. 1003 (2006).  In interpreting § 1(f), the *Avery* Court relied upon a statement

ORDER  10–

by the senator who sponsored the legislation indicating that the intent was to address "trade and commerce that is not included within the interstate concept," as well as upon an Illinois canon of construction dictating that legislation does not have "extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Id.* at 184-85, 835 N.E.2d at 852, 296 Ill. Dec. at 499. Based on the legislative history and specific canon of construction, the Illinois Supreme Court held that "a plaintiff may pursue a private cause of action under the Consumer Fraud Act if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id.* at 187, 835 N.E.2d at 853-54, 296 Ill. Dec. at 500-01. The *Avery* Court recognized that it was not formulating a bright-line rule and that each case would need to be decided on its own facts. *Id.* at 187, 835 N.E.2d at 854, 296 Ill. Dec. at 501. The Illinois Supreme Court then determined that the transactions at issue in *Avery* occurred outside the state. *Id.* at 187-90, 835 N.E.2d at 854-55, 296 Ill. Dec. at 501-02.

With regard to the question whether the Illinois Consumer Fraud Act applies, the facts of *Avery* are remarkably similar to the case before the Court. In *Avery*, a number of State Farm policyholders initiated a class action, alleging *inter alia* violation of the Consumer Fraud Act. *Id.* at 109, 835 N.E.2d at 809, 296 Ill. Dec. at 457. After the class was certified, the case was tried simultaneously to a jury and to the bench, with the jury deciding the contract claims and the trial judge ruling on the remaining claims. *Id.* at 117, 835 N.E.2d at 815, 296 Ill. Dec. at 462. The trial court found that State Farm had violated the Consumer Fraud Act and awarded $600 million in punitive damages. *Id.* at 121, 835 N.E.2d at 817, 296 Ill. Dec. at 464. On review, the Illinois Supreme Court reversed, concluding that none of the out-of-state plaintiffs had cognizable claims under the Consumer Fraud Act. *Id.* at 188, 835 N.E.2d at 854, 296 Ill. Dec. at 501. Each of the named, non-resident plaintiffs had garaged the vehicle at issue in another state, been involved in an accident outside of Illinois, obtained the relevant insurance policy through an agent in his or her own locality, and dealt

ORDER  11–

with claims adjustors and repair personnel in his or her own state. *Id.* The only connection to Illinois was that the alleged scheme to defraud was hatched and/or disseminated from State Farm's headquarters within the state. *Id.* at 189, 835 N.E.2d at 855, 296 Ill. Dec. at 502. The Supreme Court explicitly held that such "emanation" theory was insufficient to demonstrate a right of action under the Illinois Consumer Fraud Act. *Id.* (citing *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 340 & n.10 (N.D. Ill. 1997) (concluding that non-Illinois plaintiffs did not have claims under the Consumer Fraud Act when the only connection with Illinois was the headquarters of the defendant and the "cryptic assertion" that the scheme "emanated" from Illinois)). Likewise, here, plaintiff's policy was issued in, the accident occurred in, and the medical treatment was provided in Washington, not Illinois. Plaintiff alleges no specific connection with Illinois other than its status as the location of State Farm's headquarters and place where nationwide policy decisions are made. Thus, plaintiff does not plead sufficient facts to demonstrate a cognizable claim under the Illinois Consumer Fraud Act, and the Court grants State Farm's motion to dismiss plaintiff's request for punitive damages.

Although the Court bases its resolution of this issue on principles of statutory construction, the Court concludes that a conflict of laws analysis would lead to the same result. A federal court sitting in diversity applies the choice of law rules of the forum state. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). In Washington, the law of the forum applies unless an actual conflict exists between the laws or interests of the forum and the laws or interests of another state. *Id.* at 951. Here, as to this plaintiff, the laws of Washington and Illinois do not differ. Washington does not permit punitive damages in the context at issue, and Illinois would not allow them under these circumstances to this plaintiff. Thus, Washington law would control.

Even if a conflict were present, however, Washington law would still apply. Washington follows the approach in the Restatement (Second) of Conflict of Laws for

ORDER  12–

determining which state has "the most significant relationship" to the case. *Id.* at 952; *see* Restatement (Second) of Conflict of Laws §§ 6 & 145 (1971) [hereinafter "Restatement"]; *see also* <u>Johnson v. Spider Staging Corp.</u>, 87 Wn.2d 577, 580, 555 P.2d 997, 1000 (1976). Here, the factors identified in the Restatement, with respect to tort claims, weigh in favor of using Washington law: (i) the injury occurred in Washington; (ii) the bulk of the conduct allegedly causing the injury took place in Washington; (iii) plaintiff resides in and State Farm conducts business in Washington, although the company's headquarters are in Illinois; and (iv) the insurance relationship is centered in Washington. *See* Restatement at § 145.

Moreover, Illinois has minimal to no interest in making punitive damages available to plaintiff, who falls squarely within the class of persons not protected by the Illinois Consumer Fraud Act, while Washington has a strong interest in protecting its own citizens from a lack of "certainty, predictability, and uniformity of result." *See* Restatement § 6. Importing the punitive remedies of an insurer's "home" state might prevent out-of-state insurers from offering lower rates to Washington residents, might adversely affect competition within Washington between insurers domiciled in different states with varying laws, and would run contrary to Washington's general denunciation of punitive damages. *See* <u>Dailey v. N. Coast Life Ins. Co.</u>, 129 Wn.2d 572, 574, 919 P.2d 589, 590 (1996) ("[T]his court has consistently disapproved punitive damages as contrary to public policy."). For these reasons, under a choice of law analysis, the Court would likewise grant State Farm's motion to dismiss plaintiff's claim for punitive damages.

///
///
///
///
///

ORDER   13–

1  The Clerk is directed to send a copy of this Order to all counsel of record.

2  IT IS SO ORDERED.

3  DATED this 20th day of September, 2007.

        /s/ Thomas S. Zilly
        Thomas S. Zilly
        United States District Judge